Thank you, Your Honor. Good morning. May it please the Court, I'm Matthew Hoppeck on behalf of Humberto Rincon Barbosa. This is a case about the Kansas Controlled Substance Statute and whether a violation of that statute for possessing any substance can trigger removability. It's a relatively simple and clear-cut, I think, issue, but there are a lot of sub-issues that the agency, I think, didn't address that are fleshed out in our brief. If I can talk briefly just about the statute's wording and then get into the issue of administrative waiver and the Chenery Doctrine. Mr. Rincon Barbosa is a permanent resident of the United States and under the immigration statute, if you violate a controlled substance statute, you are removable. In his case, it would trigger deportation to Mexico, which is ultimately what the immigration judge ordered. Our argument at immigration court was that after the Supreme Court's decision in Malooly, the courts have to look at whether the State Controlled Substance Statute matches the Federal Controlled Substance Schedules because if States outlaw more substances, like in Kansas, they outlaw ginseng weed and other things that are not Federal Controlled Substances, then it's possible that you'd be convicted in Kansas of a controlled substance offense that would not be a Federal Controlled Substance offense. And then the courts have broadened or better defined the standard since then using the categorical approach to try to figure out whether the State's schedule of substances are means or elements of the crime. Of course, if they are means, then the State doesn't have to prove them. The prosecutor in the criminal case can just prove that you had any controlled substance, but if they are elements, then the prosecutor is a bit hamstrung. They have to prove that you had either marijuana or THC or that you had either cocaine or cocaine base, preventing, making it harder, I think, for prosecutors to obtain convictions. Kansas has chosen, I think, with its wording, with the way it's interpreted the statute afterward, with its jury instructions, to treat the substances as means, not elements, which I think enables its prosecutors to, as we've seen in the cases that Kansas interpreted this statute, to obtain convictions even when it's not ultimately clear. There's a case in the briefing about the prosecutor charging possession of marijuana and or THC and that the defendant had argued the jury might not have been unanimous about whether I had marijuana and or THC. It's a cute argument because in some ways they're the same thing, but Kansas' statute, its controlled substance schedules, defines them as two different substances. So requiring jury unanimity on these substances in some ways might avoid a conviction because how does the jury figure out if you had marijuana or THC? And the Kansas courts, I think, have resolved it pretty easily. They've said if the same evidence would prove possession of either substance, then this is an alternative means case. It's not an alternative elements case. Counsel, at the same time, if someone possessed both opium and methamphetamine at the same time, could they be convicted of two separate offenses under the Kansas statute? I don't think the Kansas courts have worked that out, and that's the thrust, I think, of the Attorney General's argument. Our first answer back to that, which I think is the cleanest way of resolving it, is that the board didn't talk about it at all. Now, you saw the prosecutor in the court below, both at the immigration judge level and at the BIA, advancing that double jeopardy argument saying that there would be a double jeopardy problem if you charged somebody with possession of two different, they're caught in their car with both opium and methamphetamines and you charge them twice. If it's the same crime, you've just committed it two ways, you might have a double jeopardy problem. The problem is the BIA in its decision here didn't address that at all. It didn't rely on double jeopardy as the problem. And so under the Chenery Doctrine, I think the proper result would be to send it back to the board and say, you tell us. Now, aside from that, even if we've got an When there's just a question of what does the Kansas law mean? I think it does. The board said they think it's, that the Kansas law is divisible. Yeah, the board said they think it's divisible, but they didn't address this double jeopardy problem. And even on questions of law, the Supreme Court's decision in INS v. Ventura was about a question of law, whether a family could, as a matter of law, be a particular social group. And although they were talking about a circuit court usurping the board's decision, what the Supreme Court ultimately said is if the board hasn't ruled on it, the circuit court shouldn't rule on it. It should send it back to the board to address it in the first instance. And there are merits issues I have with this problem, too. I'm just starting with the Chenery issue because I think it's jurisdictional. I think we have to send it back to the agency. I'm not certain if I captured the court's question. You think that even though, even if it's a pure question of what does the Kansas statute mean, and they've said the Kansas statute makes the drugs elements, we cannot analyze that on any ground other than the specific reasons the board gave? I think I was answering a different question from Judge Grass, which was about, and you didn't say double jeopardy, but I think I read between the lines that you might be getting there. That's not a question of how the Kansas courts have interpreted their own statute, but whether the conviction might have a constitutional problem. Our view is that Kansas courts have interpreted the statute to define the substances as means, not elements. There's a number of good examples. And to favor the Attorney General's position, under the Mathis decision out of the Supreme Court, it would have to be conclusive. There would have to be conclusive cases out of the highest court in Kansas, the Kansas Supreme Court, saying that these substances are elements. Well, it's not. Let's look at State v. Thompson. I agree that it's dicta, but doesn't it give some pretty strong indication that the Kansas Supreme Court thinks it's an element? So, as an aside, Thompson is a good example of why litigating these cases out of Kansas is so frustrating. Because in 13 years since Thompson, Thompson's talking about a hypothetical raised in the prosecutor's brief. Hypothetically, this might be a double jeopardy issue. And the court says in dicta, perhaps. But in 13 years since, it hasn't said a word about it, probably because the issue hasn't come up. There just aren't that many of these cases. And so, we get back to this question of how do we decide under Mathis whether the substances are a means or an element. The Fifth Circuit in its Alejos decision said, well, you have to look at the highest court in the State, which is the Supreme Court, and the cases have to be definitive. Our argument would be that Thompson is not definitive. It's a hypothetical about facts that aren't even before the court. And if there were something more definitive, the Kansas Supreme Court would have said so since then. We say more in our reply brief about Thompson as well. I don't think that the only issue isn't that Thompson was not talking about that issue. But I think it demonstrates why Kansas cases just are not conclusive, which is what Mathis requires. There are a number of factors we would use to figure out if these are means or elements. I started with the statute's text because I'm a textualist. I think that's the most important. The Mathis decision says you can use Kansas case law, but only if it's conclusive. So, if the cases aren't conclusive, and we've got a whole handful in our brief that talk about substances being means in really clear fashion, then at a minimum, tie goes to the runner. The Department of Justice has to prove their case by clear and convincing evidence, and there isn't clear and convincing evidence that it would have been an element in Kansas. There are other factors at issue here, though, and the Board waives those as well. Kansas also includes analog substances, not just controlled substances, but they're analogs. But it doesn't have a schedule of the analogs. And the argument we made at the immigration judge and at the Board was, how can the substances be an element if the prosecutor doesn't have to prove which analog it was? There are good reasons to not require a prosecutor to do that. Science is developing. Drug analogs develop faster than legislatures can write statutes. And in Kansas, the prosecutor shouldn't have to define the chemical composition of whichever substance to figure out if it was an analog, what kind of analog of the drug it was. If it's an analog, you're guilty of controlled substance possession. The problem is, if you allow that breadth at the prosecution level, then it can't be an element because you're hamstringing the prosecutor to have to prove exactly which substance it was. And in Kansas, they don't. They do in other states, but in Kansas, they don't. And the Board says nothing about the I think the simplest and cleanest solution would be to send it back to the Board to at least address that issue. Counsel, here the statute uses the term stimulant, and it appears that stimulant is an element. Why couldn't methamphetamine be a sub-element? I don't think I understand your question. So possession of a stimulant is prohibited, and then you have the cross-reference to a list of substance stimulants, one of which is methamphetamine. And we could either say that methamphetamine is a means of possessing a stimulant. Why couldn't it be a subcategory of the element stimulant? I'm going to again say the Board didn't say that, so let's send it back. But I think this Court's case is, Counsel, that that's not the right approach. We start with Arroyo, which talked about the Iowa Substance Statute. It didn't talk about sub-elements. It looked at whether you had a uniform sentence, which Kansas does. And in Arroyo, the Court said, we're going to set aside marijuana. It's an element because it has a different sentence, but all the other substances where they have the same sentence, those are means. The Court has really done this, it's binary. It's either a means or an element. It hasn't really talked about I'm suggesting that perhaps it's not binary. Yeah. I'm not aware of any cases in this Court or elsewhere that have done that, that have said there are sub-elements. I think Martinez v. Sessions is probably the clearest case on point because this Court addressed this same issue with respect to the Missouri Statute. Where I'm coming from is, you talked about looking at the text, and I'm trying to assess what the word means, means. It seems to me that the word means connotes action. And here we're dealing with substances. Is possessing a methamphetamine really a means, or is it just a sub-element of stimulant? The way the Courts in this Court have interpreted it, the substance is, the action is the possession. That's the element. And the substance has only become elements if you meet the certain factors. One of them is that the statute uses the word a instead of any. That was the issue in Martinez. The opposite is true here in Kansas. Other factors might be the jury instructions. It might be the text of the statute, the sentence that we already talked about with Arroyo. And in Kansas, all of those line up in Mr. Rincon's favor. I'm sorry if I'm not answering your question. I don't know of any case law that's talked about sub-elements, but the way I understand Mathis is that means doesn't necessarily have to be a verb. It doesn't have to be an action. And that's the way legislatures have written statutes. The McPhee case is talking about, I believe, a theft statute out of Minnesota. And pardon me if I'm wrong about that. But the separating a separate schedule of the things that are involved made it a means and not an element. I'm sorry if I'm fumbling your question. I just don't know of any case law that dealt with it. It's a different approach. But it just seems to me that perhaps when the something that you're looking at is a thing rather than an action, perhaps it's a sub-element and then not a means. Well, we look at assault statutes, for example. Some statutes, some States might say an aggravated assault is where you use a bat or a gun or a knife or a, I think that's one of the examples that's given in Mathis. And if the court sets them out, if the legislature sets them out in a disjunctive set, then they're means because the prosecutor at the trial level doesn't have to prove which of those items you had. And you look at all these factors we've talked about. Again, I think in the assault situation, if you're talking about Those are just different ways of killing someone. But they're implements. You had nunchucks or you had a gun. That wouldn't make it a sub-element because they're nouns instead of verbs, at least in my view. But it is an interesting question. I don't know if the courts will address it going forward. Yeah. I'll reserve the rest. Counsel, before you finish, under Mathis, when it's unclear, we can work our way down to the point of taking a peek at the prosecution documents. And here we've got a specific substance that was charged. Why doesn't that clinch the argument on the element side? This is where the categorical approach is so frustrating. Because I don't think Mathis does say that. I think Mathis says you can only peek if the statute is divisible. And then you can figure out from the charging documents which part of the statute they were talking about charging. No doubt, the charging document here says methamphetamine. And the conviction record says methamphetamine. But under Mullooly and the cases that have followed it, if the statute itself is not divisible, if those are just means, the defendant wouldn't have had any reason to challenge at the trial level whether he had methamphetamine or Jimson weed because they're means, not elements. In Kansas, it wouldn't have gotten you a different sentence. And so as I read Mathis and the cases that have followed it, I don't think we can just, if we can't resolve it any other way, take a peek. I don't think that's how this Court or the other circuits have resolved it. But thank you. All right. Thank you for your argument. Mr. Newell, we'll hear from you. Good morning. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General. Mr. McCollum's conviction for unlawful drug possession under Kansas law rendered him removable for having committed a controlled substance violation. And this is because the statute of conviction is divisible by the type of controlled substance and that divisibility allows us to apply the modified categorical approach. And his record clearly shows that he was a convicted offender. He was convicted of a federally controlled substance, that being methamphetamine. So why do we know that this statute is divisible? Well, it's because the Kansas State case law shows us that it is. The leading case is the case of Thompson from the Kansas Supreme Court. It shows how the Kansas Supreme Court interprets the exact statutory language that is at issue today. It says that each substance, the possession of each substance creates a separate crime. It came, it addressed that interpretation because it was contrasting it with a different drug crime where it was the possession of drug precursors with an intent to manufacture. And the defendant there was convicted of two convictions under that one for different precursors. And there with those, they were just means. But the Supreme Court contrasted that with the unlawful drug possession offenses. This one's different. And I understand that that is dicta, but under the way Kansas courts look at this dicta, that was something that was raised by counsel, that it addressed in full, and it cannot be just slightly disregarded. And I think the key fact on top of that is that there's no other Kansas case law to undercut Thompson. To say that the Kansas, if Kansas Supreme Court were to address that on point, were that to come to them, that statutory interpretation question were to come to them directly, they would come out differently. Mr. Racone relies on three cases, or sorry, three or four cases, and none of them belie or undercut Thompson. The Felix case was a case where there was basically a Scribner's error in the complaint. And it showed that it said that he possessed cocaine when he really possessed methamphetamine. And he asked the court to reject his guilty plea. But before the court, to overturn his guilty plea, but before the court rejected its argument, it made sure it said that, hey, Mr. Felix understood that the nature of his offense was methamphetamine, that he understood he pled guilty to possession of methamphetamine. So there it shows that it mattered what drug it was. If it didn't matter, if cocaine or meth were just mere means, they would have rejected Mr. Felix's argument out of hand. The Della Rosa case, in that case where it was about possession of marijuana and THC, the court just, they skipped over the argument of whether it was just a means or whether it were elements. It just assumed for the purpose of argument that they were means and said, hey, there was enough evidence in that record for a jury to find unanimously either one or the other. And then the last case, the Iberra case, is one where Mr. Raccone is trying to analogize the unlawful drug possession statute to that possession of drug precursor with intent to manufacture statute. Well, we know from Thompson that those two can't be analogized, that those are actually done differently with the possession of multiple drugs creating multiple crimes. And thus, that means they have a legal consequence. Mathis says that means are something that have no legal consequence or effect. Well, since they create different crimes, it can lead to different convictions and different further punishment, further deprivation or liberty. They certainly have a legal effect. To address Mr. Raccone's point about Chenery and what the Board decided, the first thing I'd like to point out is that this is a pure question of law that's reviewed de novo. The court we should be concerned about being, about deferring to is the Kansas Supreme Court. That's why we should look at the Thompson case. And on top of that, we are not asking the court to uphold the Board's decision on any different ground than it gave. We're asking it to uphold the ultimate determination that he's removable on the controlled substance ground of removable, removability, and that the two underlying determinations that it's A, divisible, and that because it's divisible, we can do the modified categorical approach. And the divisibility, the Board, by citing those unpublished decisions that provide circumstantial evidence that it's common in Kansas for possession of multiple drugs to create multiple crimes and convictions, you know, that is essentially, you know, relying on that double jeopardy concept. That, you know, if they were just means, those would be a double jeopardy violation. Well, the Chenery argument, as I understand it, is that you've developed an argument about Kansas law that's different, maybe better than what the Board developed. But that we should not accept that unless the Board itself says this is our reasoning under Kansas law. Do you have any authority that would help us understand whether that is a Chenery question? I understand what you just said, but is there any authority that you've located that is analogous on the Chenery point? Yes. On the Chenery point, I think I have three points in response. The first one is, in my brief, I did cite a case from this circuit that says how the deference in the how to interpret Kansas law, any state law, this court can go its own way it wishes. And so it doesn't prevent the government from coming, from providing different reasoning. The second thing is about the INS v. Ventura case that sets forth that ordinary remand rule about how courts shouldn't look into things that the agency didn't do. That is talking in the sense that when the agency is owed deference, when the question at hand is something that the agency has expertise into, yes, the courts should not just dive into it and find their own reasoning. And then, thus, the government, in writing my brief, I can't just come up with any old reasoning. And then that case was about the particular social group in the asylum, in the asylum context. That's a very specific inquiry that's about asylum, immigration law. So the Board has deference. The Board sets forth precedent regarding that issue. This Court defers to that precedent when it's reasonable. And so it's just a different situation. And then there is one case that pops into my head that I recently read. I do not, unfortunately, know the site off the top of my head. It's a Third Circuit case called Vuramindi, V-U-R-I-M-I-N-D-I. It is a case where, similar situation, the Third Circuit addressed this question, like, do we have to remand this back to the Board to essentially redo the analysis, to rethink it? Or can we do it in the first instance? And the Court said no, and the Court said, no, we don't. The Court said no for the reasons that, A, this is de novo review, and B, the agency has no deference in it. And in some ways, you could even say this is a remand futility issue, that if you remand this to the Board, the Board will this time hopefully find Thompson and say that this shows that the identity or the type of drug is an element of this offense, because it creates different crimes. Counsel, how definitive does Kansas law have to be before we would go with what we perceive to be Kansas law, rather than our own precedent in, like, the McPhee case, where you've got this separate statutory section that lists the right substances? I, the question of definitiveness, I think, can be, I think the question of divisibility in the first place is one where you're almost a detective, and you're looking at all these different sources of State law, with the State statute and the structure being the first one you look to. But as this case law shows, a lot of times it says, oh, these suggest that it's divisible or indivisible. Everyone's very specific. Here, the Thompson case is definitive enough for this Court. I think of the example in the Bueno-Muela's case that involved Missouri's drug possession statute. And this Court relied on decisions from Missouri's intermediate appellate court that weren't about the drug possession statute, but were about its trafficking statute. And so, well, the trafficking statute, each controlled substance creates a separate crime. And they saw no reason that that didn't apply similarly in its drug possession statute. So in that case, an intermediate Court decision about a different statute was sufficient under Mathis for this Court. So that in this case, we have a decision from the Kansas Supreme Court. While it came through dicta, it is definitive enough, especially when there's nothing to second guess it as the way Kansas would interpret its law. If the Court has no further questions, I very much appreciate your time and ask that the order of removal. Very well. All right. Thank you for your argument. If I can, in the time that I have left, I want to address the definitiveness question. What will the Board do on remand? All right. Well, be succinct because you have ten seconds. Oh, I had a minute left. The best case on definitiveness is Alejo. The Fifth Circuit walks through, starting in Mathis, all the way through the statute and why the State's highest court has to have said clearly what the answer is. And then on Thompson. Thompson is about a different statute, which is about manufacturing. And the Court didn't say it would find a double jeopardy issue. It said, hypothetically, it could. But then the last thing on Thompson, if I can have just a couple more seconds. The way the Court resolved the issue was not on the clarity of the statute. It was on the lack of clarity. They said the Kansas legislature, in passing that separate statute, hadn't been clear enough and so they applied the rule of lenity in favor of the defendant. Entirely different issue here. Totally different statute. Passed at a different time. So I don't think we can draw from Thompson what the Attorney General asks. Thank you. All right. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The Court will file a decision in due course.